UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

SHARON CLARK,                    )
                                 )
        Plaintiff,               )          No. 6:19-CV-114-REW
                                 )
v.                               )
                                 )          OPINION AND ORDER
LOWE'S HOME CENTERS, LLC, et al., )
                                 )
        Defendants.              )

*** *** *** ***

Plaintiff Sharon Clark filed suit in Perry Circuit Court, asserting negligence claims against

Defendant Lowe's Companies, Inc. (which has since been substituted for the proper corporate

party of interest, Lowe's Home Centers, LLC, *see* DE 12) and Teresa Johnson, store manager of

the Lowe's in Hazard, Kentucky. DE 1-1. Clark claims that, while a customer at the Lowe's where

Johnson is a manager, Clark tripped over a low barrier around an outdoor display and suffered

injuries as a result. *Id.* ¶¶ 3, 6–7. The case sounds in negligence.

Clark alleges that she is a Kentucky resident, *id.* ¶ 1, and Lowe's does not dispute Clark's

Kentucky citizenship.[1] Lowe's maintains that it is a North Carolina citizen, as Lowe's Home

Centers, LLC has only one member, Lowe's Companies, Inc., which identifies North Carolina as

its state of incorporation and principal place of business. DE 1 ¶ 9. Neither Clark nor Lowe's

---

[1] "Residence and citizenship are not the same. Diversity of citizenship, rather than diversity of residence, is necessary to confer jurisdiction upon the District Court." *Humphrey v. Ft. Knox Transit Co.*, 58 F. Supp. 362, 363 (W.D. Ky. 1945).

explicitly pleads Johnson's citizenship,[2] though both parties proceed as though Johnson is a Kentucky citizen and therefore non-diverse from Clark.

Proper citizenship allegations are foundational and should not involve guesswork. The Court directed supplementation, DE 13, and the parties complied. The record now shows that both Clark and Johnson were Kentucky citizens at the time of filing and removal. DE 14; DE 15.

## I. Posture

Lowe's filed a notice of removal, claiming that Clark had fraudulently joined Johnson to defeat diversity in the action. *Id.* ¶¶ 3–10. Clark moved to remand based on Clark's and Johnson's shared Kentucky citizenship. DE 6. Lowe's responded and supplemented its response. DE 9 & 10.

## II. Discussion

The subject-matter jurisdiction of federal courts is limited. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 114 S. Ct. 1673, 1675 (1994). There is a presumption against federal subject-matter jurisdiction, which the party seeking to proceed in federal court must overcome. *Id.*

Absent a federal question, a party invoking the Court's removal jurisdiction must demonstrate complete diversity of citizenship at the time of removal; that is, all plaintiffs must be diverse from all defendants. 28 U.S.C. § 1332(a)(1); *id.* § 1441(a); *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999). The Court must resolve all doubts about the propriety of removal in favor of remand and strictly construe the removal statutes. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549–50 (6th Cir. 2006); *Coyne*, 183 F.3d at 493.

When a non-diverse party destroys complete diversity, "the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Jerome-*

---

[2] *See* DE 6-1 ("It is anticipated that Defendant Johnson's home address is likewise in Kentucky."); DE 1 ¶ 10 (asserting that Johnson was fraudulently joined to defeat diversity).

*Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999) (internal quotation omitted). A removing party faces a heavy burden in demonstrating fraudulent joinder. *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co*, 512 F. App'x 485, 489–90 (6th Cir. 2013). A non-diverse defendant's joinder is fraudulent only if it is "clear that there can be no recovery [against that defendant] under the law of the state on the cause alleged or on the facts in view of the law." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (internal quotation omitted). In other words, the removing party must show that there is no "colorable basis for predicting that a plaintiff may recover against [that defendant]." *Coyne*, 183 F.3d at 493. "If the plaintiff has even a 'glimmer of hope,' then any charge of fraudulent joinder fails and the Court must remand the case to state court for want of subject-matter jurisdiction." *Christensen v. ATS, Inc.*, 24 F. Supp. 3d 610, 613 (E.D. Ky. 2014) (internal citation omitted); *see also Hartley v. CSX Transp.*, 187 F.3d 422, 426 (4th Cir. 1999) ("Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends."). "[T]he plaintiff's actual motive is irrelevant to the fraudulent-joinder inquiry." *Freitas v. McKesson Corp. (In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.)*, 889 F. Supp. 2d 931, 936–37 (E.D. Ky. 2012) (citing *Jerome-Duncan*, 176 F.3d at 907).

In assessing whether joinder was fraudulent, the Court employs "a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012). As with a 12(b)(6) motion, the Court "must resolve 'all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non [-]removing party.'" *Coyne*, 183 F.3d at 493 (internal quotation omitted). In evaluating fraudulent joinder, the Court can pierce the pleadings and consider the sort of evidence it would at summary judgment but solely "for the limited purpose of determining whether there are 'undisputed facts that negate the [plaintiff's] claim.'" *Casias*, 694 F.3d at 433 (internal quotation omitted).

Here, Lowe's has not carried its heavy burden to demonstrate that Clark has no "glimmer of hope" in recovering against Johnson under Kentucky law. Therefore, Johnson's joinder in this action was not fraudulent. Diversity of citizenship does not exist, and the Court must remand.

The Court can assess only the record before it, and Lowe's makes several points with no substantiating basis in the record. The Complaint does not reveal the details about the allegedly faulty display. The record does not indicate the precise relative duties of Johnson, as Lowe's manager. Lowe's contends a contrast between Johnson's duties and those (from relevant authority) of a gas-station manager. All of that is speculative and, given the lack of proof, improper as a decisional basis.

Lowe's focuses its argument on the fact that Johnson apparently did not control the specifics and organization of the "grill display" at Lowe's, which the defense says is the display over which Clark allegedly tripped. DE 9 & 9-1 (Affidavit of Kevin Stafford, Lowe's District Manager). Lowe's further asserts that Johnson did not have sufficient control over the store to qualify as a land possessor for premises-liability purposes. *See* DE 9 (citing *Grubb v. Smith*, 523 S.W.3d 409 (Ky. 2017), for the proposition that store-manager liability for dangerous conditions turns on the manager's degree of control over the premises). Finally, in its supplemental filing, Lowe's leans on a recent case in which a plaintiff fraudulently joined the non-diverse employee of the Wal-Mart where the plaintiff had slipped and fallen.[3] *See* DE 10 (discussing *Gayheart v. Wal-Mart, Inc.*, No. 7:18-cv-00096-GFVT, 2018 WL 6028702 (E.D. Ky. Nov. 15, 2018)).

---

[3] Lowe's did not seek leave from the Court to file this supplement. The Court observes that the supplement cites a single non-binding authority, which was available well before Lowe's filed its initial response to Clark's motion to remand. The Court nonetheless addresses—and disposes of—the additional argument that Lowe's raised.

Clark alleges that Johnson had certain duties as store manager, including "store maintenance, supervision and training of employees, inspection for hazardous conditions, and repair of those conditions." *See* DE 6-1. Clark asserts that discovery may reveal that Johnson had direct involvement in the complained-of display or that Johnson had knowledge of the dangerous condition that the display allegedly created. *See id.* To demonstrate the existence of Johnson's duty as a store manager, Clark points to *Shelton v. Ky. Easter Seals Soc'y, Inc.*, 413 S.W.3d 901 (Ky. 2013), which acknowledged that "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *See id.* at 908 (internal citation omitted); DE 6-1. And Clark likens this premises-liability negligence action to the products-liability context, as this Court previously remanded another action against Lowe's in which a plaintiff injured by a defective product had sued the manufacturer, Lowe's, and the non-diverse store manager. *See* DE 6-1 (discussing *Mitchell v. Dow Chemical Co.*, No. 11-117-ART, 2011 WL 2938156 (E.D. Ky. July 19, 2011)).

The Court notes several pertinent features of the pleadings, the primary source for resolving the motion on the extant spare record. First, Lowe's and Johnson both admit that Johnson held a managerial role on the date in question. *See* DE 1-3 ¶ 3 (Lowe's Answer); DE 1-4 ¶ 3 (Johnson's Answer). Further, Clark specifically alleges that the fall resulted from "a dangerous condition existing in and around the outdoor displays, specifically a low barrier that was unlikely to be observed by invitees." DE 1-1 ¶ 7. Plaintiff contends Lowe's, via its agents, "violated their duty" and "created a fall hazard" in an area Lowe's knew customers would "traverse." *Id.* ¶ 9. Johnson allegedly owed a duty, as store manager, to maintain the premises in a "reasonably safe condition." *See id.* ¶ 20. She "knew or should have known" customers would encounter the dangerous condition and yet "did not make safe the condition of the premises by repairing or warning of the

condition." *Id.* ¶ 21. Johnson, or her subordinates, "failed to adequately mark the dangerous area, to adequately post a warning concerning the dangerous area, or to adequately inform invitees of the presence of the dangerous area." *Id.* ¶ 23. Defendants deny liability. Interestingly, Johnson herself pleads that "Plaintiff's alleged injuries . . . were not caused by any act or omission of Defendant." DE 1-4 at 6 (Sixth Affirmative Defense). And further, "[t]he Defendant had done all that was reasonable with respect to Plaintiff's alleged injuries." *Id.* (Seventh Affirmative Defense). The factual freight of the Seventh Affirmative Defense suggests that Johnson, as manager, actually had a role or played a part, had "done all that was reasonable," with respect to the events in question.

Because the propriety of Johnson's joinder depends on the existence of any colorable negligence claim against her, the fraudulent-joinder analysis prompts an inquiry into the source and scope of Johnson's duty (if any) to Clark under Kentucky law. The Court has searched for but not found any binding Kentucky-law authority holding that store managers universally have a duty to maintain store premises in a reasonably safe condition for invitees and may be personally liable for their failure to take action consistent with this duty. But the apparent lack of such (admittedly narrow) precedent does not signal victory for Lowe's. The fraudulent-joinder inquiry does not ask whether state law conclusively endorses the plaintiff's claim. Instead, the Court must determine whether there is any colorable basis for recovery against the non-diverse party, bearing in mind the limits of federal subject-matter jurisdiction and resolving factual and legal uncertainties in favor of remand. *See Eastman*, 438 F.3d at 549–50; *Coyne*, 183 F.3d at 493.

The Kentucky courts' modern view of the duty question in negligence actions sets the tone. The Supreme Court of Kentucky recently described the evolution of tort law in the

premises-liability context and noted the import of Kentucky's shift to a comparative-fault regime. *See Grubb*, 523 S.W.3d at 415.

*Grubb* is a tough study. *See Greer v. Kaminkow*, No. 17:17-cv-120-REW-EBA, 2019 WL 2870092, at *9 n.16 (E.D. Ky. July 3, 2019) (discussing the dueling opinions in *Grubb*). The case was the terminus of a slip-and-fall case dating back to February 1, 2007 in Manchester, Kentucky. *Grubb*, 523 S.W.3d at 411. Grubb had fallen on cracked pavement at a Speedway and sued the Company and the store manager for negligence. *Id.* at 411–12. The case ping-ponged from federal to state court twice. *See id.* at 411. After a bench trial and decision for plaintiff, the case wended long through the Kentucky appellate apparatus. *See id.* The *Grubb* court resolved the case (reversing in part) but split 3-3 on the challenging topic of the manager's liability. *Id.* at 412, 430 (acknowledging Justice Venters's Separate Opinion). The Court of Appeals had vacated the liability award against the manager, *Smith v. Grubb*, No. 2011-CA-223-MR, 2014 Ky. App. Unpub. LEXIS 1045, at *32 (Ky. Ct. App. Sept. 26, 2014), so the Supreme Court split left that result intact. Justice Van Meter had taken part in the Court of Appeals's decision, so he recused at the Supreme Court, leaving the even, and ultimately, evenly divided, six to decide.

*Grubb* presents distinct three-justice views on the issue of a manager's duty. Justice Hughes's plurality rejected the idea that a store manager—for Speedway, at least—has the type of thorough control that would equate to land possession. Justice Hughes viewed the possessor as Speedway, impressed with a non-delegable and direct safety obligation to customers. For Smith herself to have a direct duty, the Hughes group required a duty source independent of mere employment status. Although refusing to chart a precise line, after a review of the few Kentucky cases, the Hughes group noted the key role of control with respect to the risk: "[I]n order for a land-possessor's agent to be liable to a third party for breach of an employment duty, the agent

must have sufficient control over the premises to remedy the premises' alleged defect." *Grubb*, 523 S.W.3d at 425. Phrased differently, the Hughes set viewed the instructive cases as limiting "the agent's potential liability to situations in which the agent was in substantial control of the injury-causing object or condition." *Id.* at 427. The Speedway manager, without direct authority to repair and with only a circumscribed duty of maintenance and inspection, came, to the Hughes three, "nowhere near the control that has been deemed necessary." *Id.*

Suffice it to say that the other group of Justices, under the authorship of Justice Venters, saw the situation much differently. The Venters group measured the duty based on traditional assessment of foreseeable harm, in the context of the manager's role, knowledge (the manager knew of the defect, *see id.* at 432), and perspective:

> As the employee with managerial control of the premises, in the exercise of reasonable care, [Smith] should have eliminated the defect by contacting Speedway to arrange a repair, and in the meantime, acted to warn distracted customers who may not see the hazard in time to avoid injury.
>
> . . .
>
> Even if Smith lacked the authority to fill the hole, she had plenary control to remove the danger by warning patrons. With routine regularity we see employees of Speedway and other businesses post warning placards or pylons that alert distracted patrons to hazards on the premises, including hazards around gas pumps.
>
> . . .
>
> In summary, the evidence in this case solidly establishes that Smith's managerial duties to inspect, sweep, and remove trash from the premises, together with her $100/day necessities budget, vested her with sufficient supervisory and possessory control of the premises to impose upon her a duty as a possessor on the land to report the hazardous pothole so that it could be repaired, and until that occurred, to post sufficient warning of the hazard. Her failure to do so could be reasonably regarded as a failure to exercise reasonable care.

*Id.* at 433–34.

Where does this leave Clark? Again, the context is alleged fraudulent joinder. There clearly must be no possible claim, no glimmer of hope for Clark's action as to Johnson. The landscape in Kentucky on manager liability is only as clear as a 3-3 split, in an area of "scant," "spare," and difficult authority. The ultimate liability standard is itself far from certain. Despite that, is it possible that a Lowe's manager has enough control over the store premises to edge across the Hughes line? Remember, Justice Hughes referenced control enough "to remedy" the defect, and substantial control over "the injury-causing object or condition." *Id.* at 425, 427. Here, the defect involved a temporary and created condition, an outside store display featuring a low barrier. Is it possible that a Lowe's manager has, at minimum, the power to control, to correct, to remedy a display that presents a hard-to-discern tripping hazard? Is such a display— here the alleged injury-causing object—substantially within the manager's control? A positive answer signals potential liability under even the most restrictive *Grubb* opinion.

Further, if it turns out that Johnson had a hand in the display erection, and if she acted without due care, even the Hughes formulation suggests potential liability for an activity causing harm. *See id.* at 426 (preserving liability claim for when employees "actively bring about an unreasonably dangerous condition and cause injury to a third person as a result"). Obviously, the Venters three would bless a claim if Johnson created or knew about the risk and failed to take remedial action, including warning about an objectively unapparent risk. *See id.* at 433–34. Here, the record does not detail (or certainly negate) Johnson's duties, actions, relevant knowledge, or relevant power at Lowe's. The record does not show whether Johnson oversaw or regularly

reviewed the outdoor displays.[4] The record does not show, pro or con, any notice as to problems with the display.

In *Grubb*, Justice Hughes viewed Kentucky law as evaluating "an agent's employment omission . . . for third-party tort liability on a case-by-case basis." *Id.* at 427. Given that approach, and the sharp current division in Kentucky's high court, the Court could hardly call Clark's theory here one without a glimmer of hope.[5] If the facts, as developed in discovery, demonstrate, as to Johnson, direct involvement, direct or fairly imputed knowledge, or adequate facility, implement of risk, or remedial control,[6] Plaintiff will have facts and authority supporting a colorable claim under Kentucky law.

Federal courts in Kentucky have treated the fraudulent-joinder burden faithfully. Even in *Grubb v. Speedway Superamerica LLC*, No. 8-49-GFVT, 2008 WL 11344820 (E.D. Ky. June 25, 2008), the District Court remanded in light of the potential for manager liability. *See id.* at *3

---

[4] The Lowe's Affidavit is hardly conclusive. The Affiant attributed grill display "specifics and organization" to either the "market," "district," or "regional" level. He defines none of those tiers. He says nothing about the actual construction of this or any display. Presumably, someone must turn the design into reality on the ground. Whether Johnson had any role, and whether the display as implemented—if the grill display in fact is the one at issue—adhered to the design or presented a unique risk or feature are unknown and unaddressed.

[5] Justice Van Meter was on the appellate panel in *Smith*. *See Smith*, 2014 Ky. App. Unpub. LEXIS 1045. The decision of that panel likewise recognized that manager control would be the key issue in defining duty. *Id.* at *16–20. The panel cited a list of policy concerns after saying: "Liability based on the 'control and supervision' theory should be only applied after scrutiny of the facts and when there is actual control and supervision . . . an assumption of the premises owner's duties to maintain the premises in a reasonably safe condition." *See id.* at *19–20. The panel likened Smith's powers to those of a regular and typical hourly employee, found no repair authority or duty assumption, and rejected individual liability. *Id.* at *20. As to Justice Van Meter, this augurs, but not definitively.

[6] The Kentucky Court of Appeals grappled with *Grubb* in *Beasley v. Kaelin*, No. 2017-CA-924-MR, 2019 WL 4565545 (Ky. Ct. App. Sept. 20, 2019). Recognizing the same difficulty in applying the split analysis, the Court gauged for the level of "requisite control" in the targeted employees. *Id.* at *2–3. Interestingly, the Court rejected warning control as adequate there, despite the express examples to the contrary from the Venters group. *See id.* at *4.

(recognizing that "Kentucky law does extend the duty to managers in limited circumstances"). Other decisions apply similar rigor in the removing defendant's burden to show, with clarity, the absence of any possibly valid claim. *See Pinion v. Wal-Mart Stores East, L.P.*, 2015 WL 12989971, at *1–2 (E.D. Ky. 2015) (discussing fraudulent-joinder standard, Kentucky manager liability law, principles of "control and supervision," the prior *Smith v. Grubb* intermediate appellate decision, and stating: "Cary's affidavit leaves unanswered questions about the scope of his duties to Wal-Mart invitees . . . . And, viewing the facts in Pinion's favor, it is surely reasonable to believe that managers have a duty to keep their store clean and free of hazards"); *Wimpsett v. FSL Mgmt., LLC*, No. 3:13-CV-00008-H, 2013 WL 1501050, at *3 (W.D. Ky. Apr. 11, 2013) (applying "control and supervision" test and remanding where record was "unclear" where manager fell within spectrum of Kentucky cases: "Our case is in its infancy, and the record does not detail the scope of Sullivan's responsibilities as manager[.]"); *Mitchell*, 2011 WL 2938156, at *1–3.

Clark's claim may fail once the proof arrives. The instant posture is a different point and stage from the ultimate merits. Clark, in this context, resolving the legal doubt and spare record

in her favor, has a colorable claim against Johnson under Kentucky law; it is possible—debatable and a challenge, but possible—for Johnson to be individually liable in this case.[7]

For the above reasons, the Court **GRANTS** DE 6 and ORDERS as follows:

1. The Court **REMANDS** this matter to Perry Circuit Court; and

2. The Court **DIRECTS** the Clerk to strike this matter from the Court's active docket.

This the 11th day of October, 2019.

Signed By:

*Robert E. Wier*

**United States District Judge**

---

[7] Lowe's' reliance on *Gayheart* is misplaced because of the factual dissimilarities between Gilley, the non-diverse store employee in *Gayheart*, and Johnson, the Lowe's store manager here. When a plaintiff in a slip-and-fall negligence action sues a non-diverse store employee that was not responsible for store maintenance or upkeep and had no managerial responsibilities or duties akin to a land possessor, joinder may be fraudulent and remand thus inappropriate. *See Gayheart*, 2018 WL 6028702 at *2. The issue in *Gayheart* was a leaky ceiling, and plaintiff Gayheart had not alleged that the employee Gilley had the authority to repair the leak. *Id.* at *3. The Court concluded that Gilley had no duties as a land possessor—because of his lack of "ability, authority, or responsibility" regarding the supposedly leaky ceiling—and that Gilley, as "merely an employee and *not even a manager*," had no duty to warn the plaintiff of an allegedly dangerous condition that he had not created. *Id.* (emphasis added).
    In contrast, Clark does allege that Johnson, by virtue of her role as store manager, "had a duty to maintain the premises . . . in a reasonably safe condition for invitees." DE 1-1 ¶ 20. Clark posits that Johnson may have had "specific duties that related to store maintenance, supervision and training of employees, inspection for hazardous conditions, and repair of those conditions" and that Johnson either played a role in or at least knew about the dangerous condition supposedly created by the display. DE 6-1. These assertions distinguish this action from *Gayheart*, which turned on the Court's finding of no duty (by virtue of Gilley's non-managerial position). *Gayheart*, 2018 WL 6028702 at *4. That said, the Court notes that *Gayheart* treated *Grubb* as definitive on the manager-duty measure; *Gayheart*, however, did not wrestle with the 3-3 nature of that key section of *Grubb*, so the Court discounts *Gayheart*'s force.